UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RSS WFCM2018-C44 - NY LOD, LLC,<br><br>                             Plaintiff,<br><br>v.<br><br>1442 LEXINGTON OPERATING DE LLC; AFSHIN HEDVAT; DANIEL RAHMANI; and "JOHN DOE" NO. 1 THROUGH "JOHN DOE" NO. 100,<br><br>The names of the "John Doe" Defendants being Fictitious and Unknown to Plaintiff, the Persons and Entities Intended Being Those Who May Be in Possession of, or May Have Possessory Liens or Other Interests in, the Premises Herein Described,<br><br>                             Defendants. | Civil Action File No.<br><br>_____ |

**COMPLAINT**

Plaintiff RSS WFCM2018-C44 - NY LOD, LLC ("Plaintiff"), states its complaint as follows:

**PARTIES, JURISDICTION AND VENUE**

1.      Wilmington Trust, National Association ("Trustee"), as Trustee for the Benefit of the Registered Holders of Wells Fargo Commercial Mortgage Trust 2018-C44, Commercial Mortgage Pass-Through Certificates, Series 2018-C44 (the "Trust")[1] is the sole member of Plaintiff.

2.      Trustee, acting solely in its capacity as trustee of the Trust, is a national banking association with its designated main office located in Wilmington, Delaware.

3.      Trustee is the duly appointed and presently serving trustee of the Trust created under the Pooling and Servicing Agreement dated as of May 1, 2018.

---

[1] Trustee, as trustee of the Trust, shall be referred to herein as "Interim Holder."

527548.000011 24857942.4

4. Plaintiff, acting by and through its special servicer, Rialto Capital Advisors LLC ("Special Servicer"), brings this action with express reference to the Loan (defined below) and the matters related thereto as hereinafter set forth. Based upon the Delaware citizenship of Trustee, the Trust is a citizen of Delaware. In turn, Plaintiff is a citizen of Delaware.

5. Defendant 1442 Lexington Operating DE LLC ("Borrower") is a Delaware limited liability company with an address at 3 Grenwolde Drive, Great Neck, New York 11024; Attention: Afshin Hedvat. Borrower is the owner of certain real property and improvements located at 1442 Lexington Avenue, New York, New York 10128, Block: 1522, Lot: 158, and more particularly described in Exhibit 1 annexed hereto (the "Property").

6. As Borrower is a limited liability company, its citizenship is determined by that of its members. Upon information and belief, 1442 Lexington Operating LLC, a New York limited liability company, is the sole member of Borrower and has five members: (i) Pedram Bral, a New York resident; (ii) Farzad Shayesteh, a New York resident; (iii) JDA 1442 Lexington LLC, a New York limited liability company, whose sole members, Afshin Hedvat, Daniel Rahmani and Joseph Rahmani, are each New York residents; (iv) Lex Partners LLC, a New York limited liability company, whose sole member, Sam Mehdizadh, is a New York resident; and (v) Lexington Mazal LLC, a New York limited liability company, whose sole member, Michael Khodadadian, is a New York resident. Based on the New York citizenship of each of its members, Borrower is a citizen of New York.

7. Defendant Afshin Hedvat ("Hedvat") is an individual and resident of New York with an address at 3 Grenwolde Drive, Great Neck, New York 11024.

8. Defendant Daniel Rahmani ("Rahmani") is an individual and resident of New York with an address at 118 Maple Street, Great Neck, New York 11024.

527548.000011 24857942.4

9. Hedvat and Rahmani (collectively, "Guarantors") guaranteed Borrower's obligations pursuant to the Guaranty (as defined in paragraph 22 of this Complaint).

10. John Doe No. 1 through John Doe No. 100, inclusive, are fictitious and unknown to Plaintiff and are named herein to designate any and all tenants, occupants, persons, corporations or other entities, if any, having or claiming an interest in or lien upon the Property or any part thereof, which is subject to the lien of the Mortgage (as defined in Paragraph 17 of this Complaint).

11. Based on the foregoing, this Court has subject matter jurisdiction over this dispute under 28 U.S.C. § 1332(a) because it is between citizenship of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

12. Pursuant to Section 11.3(b) of the Loan Agreement, the state and federal courts located in New York County, New York are the exclusive venue of disputes under the contract:

> ANY LEGAL SUIT, ACTION OR PROCEEDING AGAINST LENDER OR BORROWER ARISING OUT OF OR RELATING TO THIS AGREEMENT MAY AT LENDER'S OPTION BE INSTITUTED IN ANY FEDERAL OR STATE COURT IN THE CITY OF NEW YORK, COUNTY OF NEW YORK, PURSUANT TO SECTION 5-1402 OF THE NEW YORK GENERAL OBLIGATIONS LAW AND BORROWER WAIVES ANY OBJECTIONS WHICH IT MAY NOW OR HEREAFTER HAVE BASED ON VENUE AND/OR FORUM NON CONVENIENS OF ANY SUCH SUIT, ACTION OR PROCEEDING, AND BORROWER HEREBY IRREVOCABLY SUBMITS TO THE EXCLUSIVE JURISDICTION OF ANY SUCH COURT IN ANY SUIT, ACTION OR PROCEEDING.

13. Further pursuant to Section 11.3(b) of the Loan Agreement, Borrower designated and appointed:

LAW OFFICE OF D. PAUL MARTIN PLLC
545 FIFTH AVENUE, 8TH FLOOR
NEW YORK, NEW YORK 10017

AS ITS AUTHORIZED AGENT TO ACCEPT AND ACKNOWLEDGE[D] ON ITS BEHALF SERVICE OF ANY AND ALL PROCESS WHICH MAY BE SERVED IN ANY SUCH SUIT, ACTION OR PROCEEDING IN ANY FEDERAL OR STATE COURT IN NEW YORK, NEW YORK, AND BORROWER AGREES THAT SERVICE OF PROCESS UPON SAID AGENT AT SAID ADDRESS AND WRITTEN NOTICE OF SAID SERVICE MAILED OR DELIVERED TO BORROWER IN THE MANNER PROVIDED HEREIN SHALL BE DEEMED IN EVERY RESPECT EFFECTIVE SERVICE OF PROCESS UPON BORROWER, IN ANY SUCH SUIT, ACTION OR PROCEEDING IN THE STATE OF NEW YORK.

14. Based on the foregoing mandatory forum selection clause, venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(3).

## FACTUAL BACKGROUND

### FIRST COUNT
**(Mortgage Foreclosure)**

**A.    The Loan.**

15. By Loan Agreement dated as of April 12, 2018 (the "Loan Agreement"), Ladder Capital Finance LLC ("Original Lender"), Plaintiff's predecessor-in-interest, agreed to make a loan to Borrower in the original principal amount of $11,600,000.00 (the "Loan").

16. As evidence of the Loan, Borrower, inter alia, executed and delivered to Original Lender a Consolidated, Amended and Restated Promissory Note dated April 12, 2018 and in the original principal amount of $11,600,000.00 (the "Note").

17. As collateral security for the payment of the Note, Borrower executed, acknowledged and delivered to Original Lender a Consolidated, Amended and Restated Mortgage, Assignment of Leases and Rents and Security Agreement dated as of April 12, 2018 (the "Mortgage") pursuant to which Borrower, inter alia, granted to Original Lender a security interest

4

in the Property.  On April 24, 2018, Original Lender recorded the Mortgage with the Office of City Register of the City of New York (the "City Register's Office") as City Register File Number ("CRFN") 2018000136123, and duly paid the mortgage recording taxes.

18. The Mortgage also includes a security interest in favor of the holder of the Mortgage in, <u>inter alia</u>, the buildings, structures, fixtures and other improvements now or hereafter located on the Property as well as the Land, the Additional Land, the Improvements, the Equipment, the Fixtures, the Personal Property, the Leases and the Rents (each as defined in the Mortgage) all as more and more particularly described in Exhibit 2 annexed hereto (collectively, the "Collateral").

19. As additional collateral security for the payment of the Loan, Borrower executed, acknowledged and delivered to Original Lender an Assignment of Leases and Rents dated as of April 12, 2018 (the "ALR") pursuant to which Borrower, <u>inter alia</u>, granted to Original Lender a security interest in all Leases and Rents (as defined in the Loan Agreement) generated by the Property.  On April 24, 2018, Original Lender recorded the ALR with the City Register's Office as CRFN 2018000136124.

20. To perfect its interest in the Collateral, on April 24, 2018, Original Lender recorded a Uniform Commercial Code Financing Statement with the City Register's Office as CRFN 2018000136215 (the "County UCC-1").  The County UCC-1 names Original Lender as the secured party and Borrower as the Debtor.

21. To further perfect its interest in the Collateral, on May 7, 2018, Original Lender filed a Uniform Commercial Code Financing Statement with the Delaware Secretary of State ("DE SOS") as File Number 2018 3092471 (the "State UCC-1").  The State UCC-1 names Original Lender as the secured party and Borrower as the debtor.

22. In order to induce Original Lender to give the Loan and to further secure its repayment, Guarantors executed a Guaranty of Recourse Obligations dated April 12, 2018 (the "Guaranty"), wherein and whereby Guarantors irrevocably, absolutely and unconditionally guaranteed the full, prompt and complete payment when due of the Guaranteed Obligations (as defined in the Guaranty) (The Loan Agreement, the Note, the Mortgage, the County UCC-1, the State UCC-1, the Guaranty and all related loan documents shall be referred to collectively herein as the "Loan Documents").[2]

B. **Assignment of the Loan Documents to Interim Holder.**

23. Original Lender executed an allonge to the Note, indorsed in blank (the "Interim Allonge"), and delivered the Note, with the Interim Allonge affixed thereto, to Interim Holder. By virtue of this delivery, Original Lender transferred to Interim Holder all of its rights, title and interest in and to the Note and Interim Holder became the holder of the Note.

24. Original Lender also executed and delivered an Assignment of Mortgage, dated May 17, 2018 (the "Interim Assignment of Mortgage"), pursuant to which Original Lender transferred to Interim Holder all rights, title and interest in and to the Mortgage and Interim Holder became the holder of the Mortgage. On May 31, 2018, Interim Holder recorded the Interim Assignment of Mortgage with the City Register's Office as CRFN 2018000181216.

25. Original Lender also executed and delivered an Assignment of Assignment of Leases and Rents, dated May 17, 2018 (the "Interim Assignment of ALR"), pursuant to which Original Lender transferred to Interim Holder all rights, title and interest in and to the ALR and Interim Holder became the holder of the ALR. On May 31, 2018, Interim Holder recorded the Interim Assignment of ALR with the City Register's Office as CRFN 2018000181217.

---

[2] Capitalized terms not otherwise defined herein shall have the same meanings as ascribed in the Loan Documents.

26. By Uniform Commercial Code Financing Statement Amendment filed with the City Register's Office on May 31, 2018 as CRFN 2018000181218, Original Lender assigned the County UCC-1 to Interim Holder.

27. By Uniform Commercial Code Financing Statement Amendment filed with the DE SOS on July 18, 2018 as File Number 2018 4937518, Original Lender assigned the State UCC-1 to Interim Holder.

C.  **Assignment of the Loan Documents to Plaintiff.**

28. Interim Holder executed an allonge to the Note, dated March 15, 2021 and indorsed in favor of Plaintiff (the "Plaintiff Allonge"), and delivered the Note, with the Plaintiff Allonge affixed thereto, to Plaintiff. By virtue of this delivery, Interim Holder transferred to Plaintiff all of its rights, title and interest in and to the Note and Plaintiff became the holder of the Note.

29. Interim Holder also executed and delivered an Assignment of Mortgage, dated March 15, 2021 (the "Plaintiff Assignment of Mortgage"), pursuant to which Interim Holder transferred to Plaintiff all rights, title and interest in and to the Mortgage and Plaintiff became the holder of the Mortgage. On April 19, 2021, Plaintiff recorded Plaintiff Assignment of Mortgage with the City Register's Office as CRFN 2021000139045.

30. Interim Holder also executed and delivered an Assignment of Assignment of Leases and Rents, dated March 15, 2021 (the "Plaintiff Assignment of ALR"), pursuant to which Interim Holder transferred to Plaintiff all rights, title and interest in and to the ALR and Plaintiff became the holder of the ALR. On April 19, 2021, Plaintiff recorded Plaintiff Assignment of ALR with the City Register's Office as CRFN 2021000139046.

527548.000011 24857942.4

31. By Uniform Commercial Code Financing Statement Amendment filed with the City Register's Office on April 19, 2021 as CRFN 2021000139047, Interim Holder assigned the County UCC-1 to Plaintiff.

32. By Uniform Commercial Code Financing Statement Amendment filed with the DE SOS on March 29 2021 as File Number 2021 2434786, Interim Holder assigned the State UCC-1 to Plaintiff.

33. By General Assignment dated March 15, 2021, Interim Holder further assigned to Plaintiff all rights, title and interest in and to the Loan Documents.

34. Plaintiff is the current holder and in possession of the Note and the Loan Documents.

**D.  Borrower's Defaults Under the Loan Documents.**

    **i.  The Payment Default**

35. Pursuant to Section 2.3.1 of the Loan Agreement, Borrower is obliged to remit the Monthly Debt Service Payment on each Monthly Payment Date of the Term of the Loan.

36. Section 10.1(a)(i) of the Loan Agreement provides that an Event of Default shall occur if, inter alia, "if any monthly installment of principal and/or interest due under the Note . . . is not paid when due . . . ."

37. By notice dated June 15, 2020 (the "First Notice of Default"), Interim Holder, through Special Servicer, notified Borrower and Guarantors of, inter alia, Borrower's failure to remit the Monthly Debt Service Payment on the April 2020 Monthly Payment Date.

38. Despite receipt of the First Notice of Default, Borrower has continuously failed to remit the amounts due and owing under the Loan Documents.

39. Accordingly, an Event of Default has occurred and is continuing under, inter alia, Section 10.1(a)(i) of the Loan Agreement since April 6, 2021 as a result of, inter alia,

Borrower's continued failure to remit the Monthly Debt Service Payment on the April 2020 Monthly Payment Date and each Monthly Payment Date thereafter (the "Payment Default").

### ii. The Tax Default

40. Pursuant to Section 4.1.3 of the Loan Agreement, Borrower is obliged to pay, inter alia, all Taxes levied, assess or imposed as they become due and payable with respect to the Property.

41. Section 10.1(a)(iii) of the Loan Agreement provides that an Event of Default shall occur if, inter alia, "if any of the Taxes or Other Charges are not paid when due . . . ."

42. By notice dated March 11, 2021 (the "Second Notice of Default"), Plaintiff, through Special Servicer, notified Borrower and Guarantors of, inter alia, Borrower's failure to pay all Taxes levied, assess or imposed as against the Property, including, but not limited to the real estate taxes due for tax year 2020, which failure prompted Plaintiff to pay such unpaid Taxes on behalf of Borrower.

43. Accordingly, an Event of Default has occurred and is continuing under, inter alia, Section 10.1(a)(iii) of the Loan Agreement since July 1, 2020 as a result of, inter alia, Borrower's failure to pay all Taxes levied, assess or imposed as against the Property for the year 2020 (the "Tax Default").

### iii. The Lease Default

44. Pursuant to Section 4.1.10(b)(iv) of the Loan Agreement, "Borrower shall not alter, modify or change any Lease so as to . . . change any material term thereof in a manner that is not at least consistent with then market terms  . . . or . . . materially reduce the obligations of the Tenant . . . ."

9

45. Section 10.1(a)(xviii) of the Loan Agreement provides that an Event of Default shall occur if, inter alia, "if Borrower shall continue to be in Default under any of the other terms, covenants or conditions of this Agreement not specified in subsections (i) to (xvii) above . . . for thirty (30) days after the earlier of (1) Borrower's knowledge thereof and (2) notice to Borrower from Lender, in the case of any other Default . . . ."

46. Upon information and belief, Borrower altered, modified or changed the base rent of the Leases for: (i) Unit 2NW of the Property from $7,000.00 in 2019 to $2,200.00 in 2020; (ii) Unit 2SW of the Property from $6,180.00 in 2019 to $2,900.00 in 2020; (iii) Unit 3NW of the Property from $3,550.00 in 2019 to $3,200.00 in 2020; and (iv) Unit 3SW of the Property from $5,200.00 in 2019 to $2,600.00 in 2020 (collectively, the "Materially Altered Leases"), thereby materially reducing the tenants' obligations thereunder.

47. By the Second Notice of Default, Plaintiff, through Special Servicer, notified Borrower and Guarantors of, inter alia, Borrower having altered, modified or changed the Materially Altered Leases in violation of Section 4.1.10(b)(iv) of the Loan Agreement.

48. Accordingly, an Event of Default has occurred and is continuing under, inter alia, Section 10.1(a)(xviii) of the Loan Agreement since September 30, 2020 as a result of, inter alia, Borrower having altered, modified or changed the Materially Altered Leases (the "Lease Default").

    **iv.**    **The Cash Management Default**

49. Pursuant to Section 6.1 of the Loan Agreement, Borrower is obliged to, inter alia, cause all Rents and other Gross Revenue to be deposited into the Clearing Account (collectively, the "Cash Management Obligations").

50. By the Second Notice of Default, Plaintiff, through counsel, inter alia, notified Borrower and Guarantor that Borrower has failed to cause all Rents and other Gross Revenue to be deposited into the Clearing Account.

51. Borrower's failure to uphold the Cash Management Obligations continued for thirty days after the Second Notice of Default.

52. Accordingly, an Event of Default has occurred and is continuing under, inter alia, Section 10.1(a)(xviii) of the Loan Agreement since November 1, 2020 because of, inter alia, Borrower's continued failure to uphold its Lease Obligations for thirty days after notice (the "Cash Management Obligations Default").

  v. **The Financial Reporting Default**

53. Pursuant to Section 4.1.7 of the Loan Agreement, Borrower was obliged to provide to Plaintiff all required financial statements and other information specified therein.

54. By the Second Notice of Default, Plaintiff, through counsel, notified Borrower and Guarantor of, inter alia, Borrower's failure to provide Plaintiff, in accordance with Section 4.1.7 of the Loan Agreement, with: (i) the annual budget detailing the projected Gross Revenue, Operating Expenses, and Capital Expenditures for the year 2021 by November 1 of 2020, (ii) Officer's Certificates of the Chief Financial Officer of Borrower certifying that certain financial items are true and correct within forty-five (45) days following the end of the previous calendar quarter, (iii) a calculation of the Debt Service Coverage Ratio for the last four quarters, and (iv) a comparison of the budget income and expenses as set forth in the Approved Annual Budget and the actual income and expenses for the prior year and prior quarter (collectively, the "Outstanding Financial Items").

55. Borrower's failure to provide the Outstanding Financial Items continued for thirty days after the Second Notice of Default.

56. Accordingly, an Event of Default has occurred and is continuing under, <u>inter alia</u>, Section 10.1(a)(xviii) of the Loan Agreement since November 1, 2020 because of, <u>inter alia</u>, Borrower's continued failure to provide to Plaintiff the Outstanding Financial Items for thirty days after notice (the "Financial Reporting Default").

57. Section 10.1(b) of the Loan Agreement provides, in relevant part, that:

> Upon the occurrence of an Event of Default . . . and at any time thereafter Lender may, in addition to any other rights or remedies available to it pursuant to the Loan Documents or at law or in equity, take such action, without notice or demand, that Lender deems advisable to protect and enforce its rights against Borrower and in and to the Property, including declaring the Obligations to be immediately due and payable, and Lender may enforce or avail itself of any or all rights or remedies provided in the Loan Documents against Borrower and the Property, including all rights or remedies available at law or in equity . . . .

58. Section 2.2.2 of the Loan Agreement provides, in relevant part, that "[i]n the event that, and for so long as, any Event of Default shall have occurred and be continuing, the Outstanding Principal Balance and, to the extent permitted by law, overdue interest in respect of the Loan, shall, at Lender's election, accrue interest at the Default Rate . . . ." As defined in the Loan Agreement, the "Default Rate" means "a rate per annum equal to the lesser of (i) the Maximum Legal Rate or (ii) five percent (5%) above the Interest Rate." Accordingly, the Default Rate is 10.69%.

59. Section 2.4.3 of the Loan Agreement provides, in relevant part, that:

> If, after the occurrence and during the continuance of an Event of Default, prepayment of all or any part of the Debt is tendered by Borrower . . . such tender or recovery shall be deemed . . . to be a voluntary prepayment by Borrower in violation of the prohibition against prepayment set forth in Section 2.4.1 hereof, and Borrower shall pay, in addition to the Debt, or portion thereof then being prepaid or satisfied, (i) the Yield Maintenance Premium on the Outstanding Principal Balance . . . .

60.     By letter dated September 9, 2020 (the "Notice of Acceleration"), Interim Holder, through its counsel, inter alia, notified Borrower and Guarantor of, inter alia, the occurrence and continuance of Events of Default based upon, inter alia, the Payment Default, revoked Borrower's license to collect the Rents and profits generated by the Property, accelerated all sums due and owing under the Loan Documents, and demanded that Borrower remit all sums due and owing under the Loan Documents.

61.     Despite receipt of the First Notice of Default, the Notice of Acceleration and the Second Notice of Default, Borrower and Guarantor have failed to cure the existing Events of Default and satisfy their obligations under the Loan Documents.

62.     The Loan Documents further provide that, upon the occurrence of an Event of Default, the holder of the Mortgage shall be entitled to collect the rents and profits from the Property or to have a receiver appointed to take possession of the Property and to collect the rents and profits therefrom.

63.     The Loan Documents further provide that upon an Event of Default, Borrower shall be liable for all costs incurred for collecting, securing or attempting to collect or secure any amounts due under the Loan Documents, including reasonable attorneys' fees and other legal costs.

64.     As a result of the foregoing, there is now due and owing by Borrower to Plaintiff, pursuant to the Loan Documents, unpaid principal in the amount of $11,600,000.00 plus accrued but unpaid interest at the rates set forth in the Loan Documents, together with any late charges, advances, and Plaintiff's costs and expenses of collection, including, without limitation, Plaintiff's reasonable attorneys' fees and costs.

65.     Accordingly, Plaintiff does hereby elect to demand immediate payment in full of all amounts due and owing under the Loan Documents.

66. In order to protect its security, Plaintiff has been and/or may be compelled during the pendency of this action, to make payments for taxes, assessments, insurance, utilities, maintenance, security and/or other charges affecting the Property, or to protect them, in amounts exceeding any sum now held by Plaintiff for any such purpose.  Any payment made by Plaintiff, together with interest thereon, should be added to the mortgage indebtedness deemed due. Payment of all such sums is secured by the Mortgage prior to the right of any other defendant herein.

67. The defendants named herein are obligated to pay the mortgage indebtedness and/or have, claim to have, or may have some possessory or other interest in or lien upon the Property, or some part thereof, which interest or lien, if any, accrued subsequent to, and is subject and subordinate to, the lien of the Mortgage.

68. New York's COVID-19 Emergency Protect Our Small Businesses Act of 2021 (the "EPOSBA") provides protection for small businesses that own ten or fewer commercial units whether directly or indirectly and is a business that is resident in New York State, independently owned and operated, not dominant in its field, and employs fifty or fewer persons.

69. The EPOSBA does not apply to Borrower because the Property consists of more than 10 units.

70. Plaintiff has brought no other action or proceeding to recover any part of the mortgage indebtedness herein described.

**WHEREFORE**, Plaintiff demands judgment against the defendants as follows:

A. Fixing the amount due to Plaintiff pursuant to the Loan Documents;

B. Directing that Plaintiff be paid the amounts due pursuant to the Loan Documents, with interest, advances, other charges, attorneys' fees and costs;

527548.000011 24857942.4

      C.      Adjudging that the New York Properties be sold according to law to satisfy the amounts due to Plaintiff;

      D.      Barring and foreclosing the defendants, and each of them, from all equity of redemption in and to the New York Properties;

      E.      Directing that a receiver be appointed to take immediate possession of the Properties; and

      F.      Awarding such other and further relief as the Court may deem just and proper.

## SECOND COUNT
### (Security Interest Foreclosure)

71.    Plaintiff repeats and incorporates herein the allegations contained in Paragraphs 1 through 70 above, as if the same were set forth and repeated at length herein.

72.    When Borrower executed the Mortgage, it granted to Original Lender, its successors and assigns, a valid and enforceable security interest in, <u>inter</u> <u>alia</u>, the Collateral.

73.    The recording of the Mortgage, the County UCC-1, the State UCC-1 and all assignments thereof duly perfected Plaintiff's security interest in the Collateral.

74.    Pursuant to the terms of the Loan Documents, Plaintiff elects to have the Collateral sold together with the Property at a single public sale.

75.    No person or entity possesses an interest in the Collateral superior to the security interest held by Plaintiff.

**WHEREFORE**, Plaintiff demands judgment against the defendants as follows:

      A.      Adjudging that the Collateral be sold together with the Property at a single public sale to satisfy the amounts due to Plaintiff; and

527548.000011 24857942.4

B.  Barring and foreclosing the defendants of all equity of redemption in and to the Collateral.

### THIRD COUNT
**(Possession)**

76.  Plaintiff repeats and incorporates herein the allegations contained in Paragraphs 1 through 75 above, as if the same were set forth and repeated at length herein.

77.  By reason of Borrower's default under the terms of the Loan Documents, Plaintiff is entitled to possession of the Property and the Collateral.

78.  Defendants are now in possession of the Property and Collateral and have deprived, and continue to deprive, Plaintiff of possession thereof.

**WHEREFORE**, Plaintiff demands judgment against the defendants:

A.  Granting Plaintiff, its assignee or the purchaser of the Property at the foreclosure sale, possession of the Property and Collateral;

B.  Awarding Plaintiff damages for mesne profits; and

C.  Granting Plaintiff its costs of suit, including reasonable attorneys' fees.

### FOURTH COUNT
**(Appointment of a Receiver)**

79.  Plaintiff repeats and incorporates herein the allegations contained in Paragraphs 1 through 78 above, as if the same were set forth and repeated at length herein.

80.  The Leases, the Rents, the books, records and other property relating to the ownership and operation of the Property (collectively, the "Borrower's Assets") are the sole assets of Borrower.

81.  Except for certain limited qualifications as set forth in the Loan Documents, Borrower has no personal liability for repayment of the Loan, and Plaintiff's primary recourse for repayment of the Loan is the collateral securing the Loan.

527548.000011 24857942.4

82. The Loan Documents expressly allow Plaintiff to seek, and indicate Borrower's express consent to, the appointment of a receiver upon the occurrence of an Event of Default.

83. Borrower and its agents are still in possession of Borrower's Assets.

84. Plaintiff, as an interested and secured party, is potentially threatened with material losses and injuries, including the Borrower's Assets suffering continuous waste and a dissipation or diminution in value, if Borrower remains in control of Borrower's Assets.

85. Therefore, in accordance with Rule 66 of the Federal Rules of Civil Procedure, Plaintiff, as a secured creditor, asks the Court to appoint a receiver to take immediate possession of and hold, subject to the discretion of this Court, the Property and Borrower's Assets.

**WHEREFORE**, Plaintiff demands judgment against the defendants as follows:

A. Appointing a receiver of the Property and Borrower's Assets;

B. Directing all tenants in possession of the Properties to pay the appointed receiver all rent, income and profits;

C. Awarding Plaintiff its costs of suit and attorneys' fees; and

D. Granting such other relief as is equitable and just.

## THIRD COUNT
### (Breach of Contract of the Guaranty)

86. Plaintiff repeats and incorporates herein the allegations contained in Paragraphs 1 through 85 above, as if the same were set forth and repeated at length herein.

87. In order to induce Original Lender to make the Loan to Borrower, Guarantor executed, acknowledged and delivered to Original Lender the Guaranty.

88. Pursuant to Sections 1.1 and 1.2 of the Guaranty, Guarantor irrevocably and unconditionally covenanted and agreed to be liable for Borrower's obligations and liabilities of

Borrower under Section 11.22 of the Loan Agreement, and that Guarantor shall fully perform each and every term and provision thereof.

89. Specifically, Borrower and Guarantor are personally liable to Plaintiff on a joint and several basis for any loss, damage, cost, expense, liability, claim or other obligation incurred by Plaintiff as a result of, <u>inter</u> <u>alia</u>: (a) Borrower's failure to pay Taxes pursuant to Section 11.22(vi)(A) of the Loan Agreement; (b) Borrower's failure to provide financial information pursuant to Section 11.22(xi)(B) of the Loan Agreement; and (c) Borrower's amendment, modification, termination, cancellation or acceptance of a surrender of any Lease, or the waiver of any of the material terms or provisions of any Lease, in each case without Lender's prior written consent pursuant to Section 11.22(xii) of the Loan Agreement.

90. Moreover, Guarantor agreed that, with or without notice or demand, Guarantor will reimburse Plaintiff, to the extent that such reimbursement is not made by Borrower, for all expenses (including reasonable attorney's fees) incurred by Plaintiff in connection with the collection of the Guaranteed Obligations or any portion thereof or with the enforcement of the Guaranty.

91. Plaintiff is the current holder of the Note, the Mortgage and the Guaranty.

92. Accordingly, and as a result of the continuation of the Tax Default, the Financial Reporting Default and the Lease Default, Guarantor is obligated to Plaintiff under the Guaranty in an amount to be determined.

93. Plaintiff has brought no other action or proceeding to recover any part of the Debt herein described.

**WHEREFORE**, Plaintiff demands judgment against Guarantor as follows:

A. Fixing the amount due to Plaintiff from Guarantor pursuant to the Guaranty and any other applicable Loan Documents;

   B. Adjudging that Plaintiff is entitled to be paid by Guarantor the amounts due pursuant to the Guaranty, with interest, advances, other charges, attorneys' fees and costs; and

   C. Awarding Plaintiff its costs of suit and attorneys' fees; and

   D. Granting such other relief as is equitable and just.

Dated: New York, New York
   May 17, 2021

          **THOMPSON & KNIGHT LLP**

        By: */s/ Keith M. Brandofino*
         Keith M. Brandofino, Esq.
         David V. Mignardi, Esq.
         Attorneys for Plaintiff
          *RSS WFCM2018-C44 - NY LOD, LLC*
         900 Third Avenue, 20th Floor
         New York, New York 10022
         (212) 751-3001
         keith.brandofino@tklaw.com
         david.mignardi@tklaw.com

527548.000011 24857942.4