UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
RSS WFCM2018-C44-NY LOD, LLC,

                                Plaintiff,

             -against-

1442 LEXINGTON OPERATING DE LLC, et al.,

                                Defendants.
------------------------------------------------------------------X

21-CV-4424 (DLC) (VF)

**REPORT AND RECOMMENDATION**

**VALERIE FIGUEREDO, United States Magistrate Judge**

**TO: THE HONORABLE DENISE L. COTE, United States District Judge.**

      This matter was referred to the undersigned for a Report and Recommendation as to whether a judgment of foreclosure and sale should be issued and the amount of the judgment.

## BACKGROUND

      Plaintiff RSS WFCM2018-C44 – NY LOD, LLC – as Trustee for the Benefit of the Registered Holders of Wells Fargo Commercial Mortgage Trust 2018-C44, Commercial Mortgage Pass-Through Certificates, Series 2018-C44 (the "Trust") – acting by and through Rialto Capital Advisors, LLC (the "Special Servicer"), under the Pooling and Servicing Agreement (the "PSA") dated as of May 1, 2018, commenced this action against 1442 Lexington Operating DE LLC (the "Borrower" and "Defendant")[1], to foreclose a Consolidated, Amended and Restated Mortgage, Assignment of Leases and Rents and Security Agreement dated April 12, 2018 (the "Mortgage"), see ECF No. 90, Decl. of Joao Gauer ("Gauer Decl.") Ex. 4, in the original principal amount of $11,600,000. The Mortgage is secured by, among other things, the

---

[1] Plaintiff also sued defendants Afshin Hedvat and Daniel Rahmani, who guaranteed the Borrower's obligations. See ECF No. 5 ¶¶ 7-9.

real property and improvements at 1442 Lexington Avenue in Manhattan (the "Property"). See Gauer Decl. ¶¶ 2, 5-7.

In a loan agreement dated April 12, 2018 (the "Loan Agreement"), the Borrower obtained a loan from Ladder Capital Finance LLC in the amount of $11,600,000 (the "Loan"). Gauer Decl. ¶¶ 5-6, Ex. 2 (the Loan Agreement). The loan was memorialized in the Consolidated, Amended and Restated Promissory Note, dated April 12, 2018, and executed by the Borrower (the "Note"). Gauer Decl. ¶ 6, Ex. 3 (the Note). To secure payment of the Note, the Borrower executed the Mortgage. Id. ¶ 7.

In Counts I through III of the complaint, Plaintiff sought a foreclosure of the Mortgage, a public sale of the Property, and a declaration that the Plaintiff is entitled to possession of the Property and the related collateral. ECF No. 5 ¶¶ 15-78. On October 22, 2021, Plaintiff moved for summary judgment against the Borrower on these counts and also sought to strike the affirmative defenses pleaded in the answer. See ECF Nos. 58-61. In an opinion and order dated December 2, 2021, the Honorable Denise L. Cote granted Plaintiff's summary judgment motion as to Counts I through III, concluding that Plaintiff had established the existence of the Mortgage, the Note, and the Borrower's default. See ECF No. 73 at 5-10. As Judge Cote explained, Plaintiff had shown that the Borrower executed the Note in favor of the Original Lender; as collateral for the Loan, the Borrower executed the Mortgage, which it delivered to the Original Lender; the Plaintiff is the assignee of the Note, the Mortgage, and other Loan Documents; and the Borrower is in default of its obligations under the Loan Agreement. Id. at 2-

3, 7-8. The Court referred the calculation of the amount of the judgment of foreclosure and sale to the undersigned.[2]

Plaintiff seeks a computation of the amounts it is owed, as follows: (1) the principal balance of the Loan, in the amount of $11,600,000; (2) accumulated unpaid interest owed on the principal balance of the Loan through March 6, 2023, in the amount of $1,950,784.89; (3) default interest, at the default rate of 5%, through March 5, 2023, in the amount of $1,996,801.68; (4) late fees under the Loan Agreement in the amount of $19,132.48; (5) fees owed to the Special Servicer in the amount of $116,403.23; (6) taxes and insurance advances paid by Plaintiff with respect to the Property in the amount of $617,883.66; (7) property protective advancement payments for operating expenses, repair and maintenance costs and other expenses related to the Property in the amount of $241,402.92[3]; (8) accrued interest on the taxes and insurance advances and on the property protective advances in the amount of $166,895.27; (9) a liquidation fee in the amount of $146,939.51; and (10) a UCC filing fee in the amount of $81.52, a NSF check fee in the amount of $75.00, and a payoff processing fee in the amount $400. See Gauer Decl. ¶¶ 13, 16, 19, 24, 25, 30, 36. Plaintiff is in possession of $141,040.22, in the form of the Suspense and Reserve Balances, which it will apply to the amount it claims it is owed by Defendants. Gauer Decl. at 10 (Schedule A). Plaintiff thus seeks a total award of $16,715,784.85. Gauer Decl. ¶ 10, Schedule A. Plaintiff has brought no other action or proceeding to recover any part of the mortgage indebtedness it seeks to recover in this action. Id. ¶ 38.

---

[2] This damages calculation was originally referred to the Honorable Debra C. Freeman, see ECF No. 75, but on February 12, 2023, an amended referral re-assigned the calculation to the undersigned. ECF No. 85.

[3] In Gauer's Declaration, the original amount requested by Plaintiff for property protective advances was $241,427.92. In Gauer's Supplemental Declaration the amount was reduced by $25.00 to $241,402.92. See ECF No. 95 at ¶ 8(b) n.3.

In support of its motion, Plaintiff has provided declarations from Jaoa Gauer, in his capacity as an Asset Manager of Rialto Capital Advisors, LLC, the Special Servicer for the Loan. See Gauer Decl.; ECF No. 96, Reply Decl. of Jaoa Gauer ("Gauer Reply Decl."). Gauer attests that the facts set forth in his declaration are based on his personal knowledge and his review of the books and records of Plaintiff and the Special Servicer. Gauer Decl. ¶¶ 3-4.

On May 22, 2023, Defendants opposed Plaintiff's declaration of amounts due. See ECF No. 92. On May 30, 2023, Plaintiff submitted a reply brief in further support of its proposed computation of damages and Gauer submitted a supplemental declaration. See ECF No. 95, Suppl. Decl. of Joao Gauer ("Gauer Suppl. Decl."); Gauer Reply Decl. On June 5, 2023, the undersigned granted Defendants' request to file a sur reply, which was filed on June 23, 2023. See ECF Nos. 97-99. On July 12, 2024, the undersigned directed Plaintiff to submit documentation to support the legal fees it sought as part of the sum for protective advances it had requested. See ECF No. 105. Plaintiff submitted additional documentation supporting its requested legal fees on July 25, 2024. See ECF No. 106, Decl. of Keith M. Brandofino ("Brandofino Decl.").

## DISCUSSION

### A. Judgment of Foreclosure and Sale

After concluding that Plaintiff had established a prima facie entitlement to foreclosure and that Defendants had failed to raise a genuine issue of fact as to any defense, Judge Cote awarded Plaintiff summary judgment on Counts I through III of the Complaint. See ECF No. 73 at 5, 11; see also ECF No. 74. Plaintiff is thus entitled to a final judgment of foreclosure and sale of the Property. See Cap. One Nat'l Ass'n v. 48-52 Franklin, LLC, No. 12-CV-3366 (LGS), 2014 WL 1386609, at *8 (S.D.N.Y. Apr. 8, 2014) (awarding judgment of foreclosure and sale

where plaintiff established prima facie case and defendant had no defense). Moreover, I recommend that the proceeds of the sale be applied to the total amount owed pursuant to the Loan Documents, as set forth below. See OneWest Bank, N.A. v. Denham, No. 14-CV-5529 (DRH) (AKT), 2015 WL 5562980, at *14 (E.D.N.Y. Aug. 31, 2015) (recommending foreclosure and sale of property with proceeds to be applied to amount owed on the loan, where plaintiff established existence of an obligation secured by a mortgage and a default of that obligation).

### B. Damages

Under Section 1321 of the New York Real Property Actions and Proceedings Law ("RPAPL"), a "trial court has the authority to compute the amount owed or appoint a referee to do the same." U.S. Bank Tr., N.A. v. Dingman, No. 16-CV-1384 (CS), 2016 WL 6902480, at *4 (S.D.N.Y. Nov. 22, 2016). "It is Plaintiff's burden to prove damages." Lupia v. N.J. Transit Rail Operations, Inc., No. 21-CV-11077 (LJL), 2023 WL 2387100, at *6 (S.D.N.Y. Mar. 7, 2023). Damages must be determined with reasonable certainty. Hosking v. New World Mortg., Inc., 570 F. App'x 28, 31 (2d Cir. 2014). "Any determination of damages in an action for foreclosure and sale should be determined under the terms of the Notes and Mortgages." E. Sav. Bank, FSB v. Rabito, No. 11-CV-2501 (KAM) (VVP), 2014 WL 4804872, at *1 (E.D.N.Y. Sept. 10, 2014) (quotations and citation omitted).

As an initial matter, the Borrower challenges the sufficiency of the Gauer Declaration used by Plaintiff to support its damages calculation, arguing that the declaration is hearsay and is insufficient to prove the amounts owed. See ECF No. 92 at 1-3. The Borrower is mistaken. The Gauer Declaration and its exhibits are admissible under the business-record exception in Federal Rule of Evidence 803(6). Included as exhibits to the Gauer declaration are the Loan Agreement, the Note, the Mortgage, and the Pooling and Servicing Agreement. See Gauer Decl. Exs. 1-4.

Those Loan Documents are the foundation for the majority of the calculations discussed herein. Gauer attests that, "[i]n connection with performing its duties as special servicer," Rialto, the Special Servicer, "creates, receives, and maintains records, including the exhibits attached to the complaint and/or this declaration, in the regular course of the Special Servicer's business activities on behalf of Plaintiff." Gauer Decl. ¶ 4. He further attests that he is "familiar with [the] Special Servicer's record-keeping practices and procedures" and conducted a "review of Plaintiff's business records, as maintained by [the] Special Servicer, regarding Borrower." Id. Additionally, Gauer attests that the exhibits "were received, created, or otherwise generated at or near the dates reflected on such documents," and "are true and correct copies of the corresponding documents in [the] Special Servicer's business records that are in the custody and control of the Special Servicer." Id. As Judge Engelmayer recently concluded, these "statements are sufficient for admission under Federal Rule of Evidence 803(6)'s 'business records' exception to the rule against hearsay, as the declaration establishes, *inter alia*, that the records at issue were 'kept in the course of a regularly conducted activity' of Rialto's work on behalf of [Plaintiff.]." See Wells Fargo Bank, Nat'l Assoc. as Tr. for Benefit of Holders of CD 2018-CD7 v. Prince 26, LLC et al, No. 22-CV-5586 (PAE) (OTW), 2023 WL 5152420, at *6 (S.D.N.Y. Aug. 10, 2023). Defendants have not provided any rebuttal calculations or specific opposition to the methodology used by Plaintiff to reach any of its claimed amounts.

      Defendants also appear to contend that Plaintiff should not be entitled to receive both its proposed damages computation and the monies held by the Receiver in the receivership account. See ECF No. 92 at 2-3. Plaintiff, however, has not claimed any entitlement to the monies held by the Receiver. See Gauer Reply Decl. at 3. An accounting of the monies held by the Receiver would be necessary only if the proceeds from the sale of the Property at a foreclosure auction

does not render Plaintiff whole on the amounts owed under the Loan Documents. See RPAPL § 1371(4).

### 1. Unpaid Principal

The original loan amount was $11,600,000. Gauer Decl. ¶ 5, Ex. 2 § 2.1.2. The Borrower was obligated to make monthly, interest-only payments until payment of the principal was due on May 6, 2023. Id. Ex. 2 §§ 2.3.1, 2.3.2. On April 1, 2020, however, the Borrower failed to remit the monthly payment amounts required under the Loan Agreement and thus the Borrower defaulted on April 6, 2020.[4] Gauer Decl. ¶¶ 9, 13; see also ECF No. 73 at 2. As such, the full principal amount of $11,600,000 is still owed. Gauer Decl. ¶ 13. Defendants do not contest that amount. I thus recommend that Defendants be ordered to pay $11,600,000 as the unpaid principal balance on the loan.

### 2. Accumulated Unpaid Interest

The Loan Agreement provides for the accrual of interest on the outstanding principal balance of the Loan at the interest rate of 5.69% per annum. Gauer Decl. Ex. 2 § 2.2.1, Schedule I (defining "Interest Rate"). The Loan Agreement further provides that interest "shall be calculated by multiplying (a) the actual number of days elapsed in the period for which the calculation is being made by (b) the daily rate based on a three hundred sixty (360) day year . . . by (c) the Outstanding Principal Balance." Id. at § 2.2.3.

---

[4] To the extent Defendants challenge the sufficiency of Plaintiff's proof as to the Borrower's default, the law of the case precludes reconsideration of this finding by Judge Cote. See Gauer Reply Decl. at 2 n.2. Judge Cote already determined that the "[B]orrower went into default under the [Loan] Agreement as of April 6, 2020." See ECF No. 73 at 2. Any challenge to that finding is precluded at this stage of the case. See Now-Casting Econs., Ltd. v. Econ. Alchemy LLC, No. 18-CV-2442 (JPC), 2022 WL 4280403, at *10 (S.D.N.Y. Sep. 15, 2022) ("The [law of the case] doctrine demands that 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'") (quotations and citation omitted).

In her summary judgment decision, Judge Cote concluded that the default occurred on April 6, 2020. See ECF No. 73 at 2. From that date through March 6, 2023, there are 1,064 days. Gauer Decl. ¶ 13. Interest at the non-default rate of 5.69% has thus accumulated on the principal amount of $11,600,000 for 1,064 days. Plaintiff has calculated that amount to be $1,950,784.89. See Gauer Decl. ¶ 13, Schedule A. Defendants do not contest this calculation. I therefore recommend that Defendants be directed to pay $1,950,784.89 in accumulated unpaid interest.

### 3. Accumulated Default Interest

The Loan Agreement provides that after "any Event of Default shall have occurred and be continuing, the Outstanding Principal Balance and, to the extent permitted by law, overdue interest in respect of the Loan, shall, at Lender's election, accrue interest at the Default Rate, calculated from the date the Default occurred . . . without regard to any grace or cure periods contained herein." Gauer Decl. Ex. 2 § 2.2.2. The Default Rate is defined as "a rate per annum equal to the lesser of (i) the maximum rate permitted by applicable law, or (ii) five percent (5%) above the Non-Default Rate." Id. Ex. 2, Schedule I (defining "Default Rate"). As Gauer explains, default interest accrues at the Default Rate each month on the unpaid principal amount and on all accumulated and unpaid interest. Id. at ¶ 15, Schedule I. Plaintiff has calculated default interest using the default interest rate of 5% above the non-default rate of 5.69% from April 6, 2020, until March 6, 2023, for a total of $1,996,801.68. Gauer Decl. ¶¶ 12, 14, 16, Schedule I. Defendants do not contest this calculation. I thus recommend that Defendants be directed to pay $1,996,801.68 in accumulated default interest.

### 4. Late Fees

Plaintiff also seeks an award of late fees in the amount of $19,132.48. Gauer Decl. ¶ 17. Under the Loan Agreement, the Borrower is obligated to pay the Lender "upon demand an

8

amount equal to the lesser of four percent (4%) of such unpaid sum or the maximum amount permitted by any Legal Requirements," if the principal balance of the loan or "other sum due under the Loan Documents . . . is not paid by the Borrower on the date on which it is due." See Gauer Decl. Ex. 2 § 2.3.3 ("Late Payment Charge"). Plaintiff calculates the Late Fees based on the Borrower's failure to remit the monthly payment amounts commencing on April 6, 2020, and continuing until September 9, 2020, the date on which Plaintiff accelerated the Loan. See Gauer Decl. ¶ 18, Schedule II. The amount of accrued late fees for that period is $19,132.48. See id. at Schedule II. Defendants do not contest the accuracy of Plaintiff's calculation. I thus recommend an award of late fees in the amount of $19,132.48.

### 5. Special Servicing Fees

Plaintiff seeks an award of $116,403.23 in Special Servicing Fees. Gauer Decl. ¶ 30. Under the Loan Agreement, the Borrower agreed that Plaintiff could "securitize the Loan" and appoint a Special Servicer or Master Servicer to service the loan. See Gauer Decl. Ex. 2 §§ 9.1, 11.24. The Loan Agreement also states that the Borrower is obligated to reimburse Plaintiff for "all reasonable out-of-pocket costs and expenses," and includes expenses charged by the Servicer as a specific example of a recoverable expense. See id. § 11.24. The Borrower thus consented to the appointment of a Special Servicer and agreed to reimburse Plaintiff for the fees charged by the Special Servicer.

Further, the Pooling and Servicing Agreement states that Plaintiff must pay the Special Servicer a Special Servicing Fee, calculated as outlined in the agreement. See Gauer Decl. ¶ 28, Ex. 1 § 3.11. Under the terms of the Pooling and Servicing Agreement, the Special Servicing Fee is $3,500 per month. Gauer Decl. ¶¶ 29-30. Special Servicing Fees were assessed beginning in June 2020, when the Special Servicer began servicing the Loan. Gauer Dec. ¶ 30. The total

amount of Special Servicing Fees is $116,403.23. See Gauer Decl., Schedule III. Defendants do not contest the Special Servicing Fee, and the Loan Agreement obligates Defendants to reimburse for Special Servicing Fees. Additionally, the amount of the fee sought here is the contracted-for amount of $3,500 per month. I thus recommend that Plaintiff be awarded $116,403.23 in Special Servicing Fees.

### 6. Liquidation Fee

Next, Plaintiff seeks an award of $146,939.51 as a liquidation fee under the Loan Agreement. Id. ¶ 36. Under the Loan Agreement, the Borrower is obligated to reimburse Plaintiff for reasonable out-of-pocket costs and expenses incurred by the Lender or Servicer in connection with the Loan including any fees charged by the Servicer. Id. ¶ 31, Ex. 2 § 11.24. Under the Pooling and Servicing Agreement, the Special Servicer is entitled to receive a "Liquidation Fee . . . with respect to [] each Specially Serviced Loan . . . as to which the Special Servicer receives any . . . Liquidated Proceeds." See id. at Ex. 1 § 3.11. And "Liquidation Proceeds" is defined in Article I of the Pooling and Servicing Agreement as "cash amounts" received in connection with "the liquidation . . . of a Mortgaged Property . . . through . . . foreclosure sale." See id. at Ex. 1. § 1.01 (defining "Liquidation Proceeds"). The agreements thus provide that in event the Property is sold at a foreclosure sale, the Special Servicer is entitled to the payment of a liquidation fee.

Plaintiff provides that the Liquidation Proceeds here are $14,693,951.49.[5] Id. ¶ 35. Accordingly, Plaintiff claims it is entitled to a Liquidation Fee of $146,939.51, or 1% of the Liquidation Proceeds. Id. ¶ 36. However, the exact amount of the liquidation fee should be

---

[5] This amount is the sum of the outstanding principal balance on the Loan ($11,600,000.00), the accumulated interest ($1,950,784.89), the special servicing fees ($116,403.23), the property protective advances ($241,427.92), the escrow advances ($617,883.66), a $81.52 UCC Filing Fee, a $75.00 NSK CK Fee, a $400.00 Payoff Fee, and $166,895.27 of interest on advances. Gauer Decl. ¶ 35, Schedule A.

calculated on what is recovered from the foreclosure sale of the Property. See Wilmington Tr., Nat'l Assoc. v. Winta Asset Mgm.t LLC, No. 20-CV-5309 (JGK) (VF), 2023 WL 9603893, at *7 (S.D.N.Y. Dec. 21, 2023), report and recommendation adopted, No. 20-CV-5309 (JGK), 2024 WL 1700032 (S.D.N.Y. Apr. 18, 2024). Accordingly, I recommend that the exact dollar amount of the Liquidation Fee should be calculated after the foreclosure sale occurs and after Plaintiff receives a bill from the Special Servicer for the Liquidation Fee. At such time, Plaintiff should submit evidence that it paid the Special Servicer the requested Liquidation Fee, at which point the Court should direct Defendants to reimburse Plaintiff for that amount. I thus recommend that Plaintiff be awarded $146,939.51 in liquidation fees.

### 7. Tax and Insurance Payments, Protective Advances, and Other Fees

Under the Loan Agreement, the Borrower "shall pay all Taxes and Other Charges . . . as the same become due and payable, and shall furnish to Lender receipts for payment of the Taxes and the Other Charges prior to the date the same shall become delinquent." Gauer Decl. Ex. 2 § 4.1.3. The Loan Agreement also provides that Plaintiff will be reimbursed for the amount it advances in insurance premiums and taxes. Specifically, under Section 10.3 of the Loan Agreement, if the "Borrower fails to perform any covenant or obligation contained in the Loan Documents . . . Lender may, but shall have no obligation to, perform, or cause performance of, such covenant or obligation, and all costs, expenses, liabilities, penalties and fines of Lender incurred or paid in connection therewith shall be payable by Borrower to Lender upon demand and if not paid shall be added to the Obligations . . . and shall bear interest at the Default Rate." Id. at Ex. 2 § 10.3. Additionally, the Loan Agreement obligates the Borrower to reimburse Plaintiff for reasonable out-of-pocket expenses incurred in connection with the loan. See id. at Ex. 2 § 11.24.

11

1. *Taxes and Insurance Payments*

Gauer attests that Plaintiff has advanced a total amount of $617,833.66 in insurance premiums and taxes that were owed but not paid by the Borrower. Id. ¶ 24; see also Gauer Suppl. Decl. ¶ 8(a), Ex. A-3. The Loan Agreement obligates the Borrower to reimburse Plaintiff for such payments. Plaintiff has substantiated these expenses with a copy of its payment history for the Taxes and Insurance Premiums it paid, as well as tabulations of the invoices, including invoice numbers for the protective reimbursable advances paid, such as property inspections and appraisals. See Gauer Suppl. Decl. Exs. 3-4. As such, I recommend that Plaintiff be awarded $617,833.66 in taxes and insurance payments.

2. *Attorneys' Fees and Costs*

Plaintiff also seeks an award of $241,402.92 for property protective advances related to the payment of attorneys' fees and costs incurred in connection with the prosecution of this foreclosure action. See Gauer Decl. ¶ 24, Ex. 4; see also Brandofino Decl. ¶¶ 1-3, Ex. A.[6] Various provisions in the Loan Documents make clear that Plaintiff is entitled to reasonable attorneys' fees and costs expended in enforcing its rights under the Loan Documents. See Gauer Decl. Ex. 2 § 11.13 ("Borrower shall pay or, if Borrower fails to pay, reimburse Lender upon receipt of notice from Lender, for all reasonable costs and expenses (including reasonable

---

[6] In Gauer's Declaration, Plaintiff initially requested $241,402.92 in property protective advances related to legal fees. See Gauer Decl. ¶ 35. On July 25, 2024, in response to the Court's request, see ECF No. 105, Plaintiff submitted a declaration from Keith M. Brandofino, which included invoices substantiating the legal fees sought. See Brandofino Decl. Ex. A. The amount of legal fees in those invoices totaled $256,166.69. See Gauer Suppl. Decl. Ex. 4; Brandofino Decl. ¶ 12. Plaintiff does not explain why the amount of legal fees sought increased between Gauer's Declaration and its supplemental submissions. I assess only the propriety of the $241,402.92 in property protective advances requested by Plaintiff, because that was the amount in Gauer's Declaration submitted with Plaintiff's inquest submissions that Defendants had an opportunity to oppose.

attorneys' fees and disbursements).""); see also Gauer Decl. Ex. 2 § 10.1(b); Gauer Decl. Ex. 4 § 7.3. These provisions are sufficiently clear to justify an award of fees to Plaintiff, provided the fees are reasonable. See Gaia House Mezz LLC v. State St. Bank & Tr. Co., 720 F.3d 84, 95 (2d Cir. 2013) (upholding a fee provision in a loan contract).

Plaintiff submitted invoices from its attorneys, Holland & Knight LLP, see Brandofino Decl. Ex. A, and Plaintiff's counsel submitted a declaration attesting to the hours worked on this matter and the fees charged and received by the law firm to date. See Brandofino Decl. Exs. A-D. Courts in this Circuit allow plaintiffs in foreclosure actions to recover such advances where the plaintiff submits sufficient documentation to support the accuracy of the amounts claimed. E. Sav. Bank, FSB v. Johnson, No. 13-CV-6070 (AMD) (ST), 2022 WL 18858919, at *5 (E.D.N.Y. Dec. 27, 2022) (collecting cases), report and recommendation adopted, No. 13-CV-6070 (AMD) (ST), 2023 WL 1778788 (E.D.N.Y. Feb. 6, 2023).

A court may award attorneys' fees and costs where there is "sufficiently clear" contractual language providing for such an award, provided those fees are "reasonable." NetJets Aviation, Inc. v. LHC Commc'ns, LLC, 537 F.3d 168, 175 (2d Cir. 2008). A reasonable fee is generally described as the product of a reasonable hourly rate and a reasonable number of hours expended by attorneys and their staff on the matter. Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011). In considering the reasonableness of the hourly rate, the Court's analysis is guided by the prevailing market rate for similar services. Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984). The relevant community is this District. Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d 182, 183-84 (2d Cir. 2008). The Court also considers factors including the attorney's experience, reputation, and ability; the time, labor, and skill required; the novelty and complexity of the legal issues posed; awards in similar cases; and

the degree of success. Agudath Isr. of Am., et al. v. Hochul, No. 22-38, 2023 WL 2637344, *2 n.2 (2d Cir. Mar. 27, 2023).

As to the reasonableness of the number of hours expended, the Court "does not play the role of an uninformed arbiter but may look to its own familiarity with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties." Gierlinger v. Gleason, 160 F.3d 858, 876 (2d Cir. 1998) (quotation marks and citation omitted). Additionally, "[f]ee awards normally include those reasonable out-of-pocket expenses incurred by the attorney," Tr. of N.Y.C. Dist. Council of Carpenters Pension Fund Welfare Fund, Annuity Fund v. B&L Moving & Installation, Inc., No. 16-CV-4734 (GBD) (JLC), 2017 WL 4277175, at *8 (S.D.N.Y. Sept. 26, 2017) (citations omitted), including for items such as "shipping, filing fees, process servers, and litigation support." HSBC Bank USA, N.A. v. PAKS Holdings, LLC, No. 19-CV-10193 (PGG) (JLC), 2021 WL 667661, at *8 (S.D.N.Y. Feb. 22, 2021), report and recommendation adopted, 2021 WL 5042710 (S.D.N.Y. Oct. 28, 2021).

Plaintiff seeks $241,402.92 for legal fees and costs incurred from April 6, 2020, through February 13, 2023. See Gauer Suppl. Decl. Ex. 1. Eight attorneys, three paralegals, one law clerk, one administrative support professional, and one special assistant worked on this matter during the relevant period. See Brandofino Decl. Ex. A. In total, the firm billed for 512.10 hours of work on this matter, with work by attorneys totaling 396.50 hours and non-attorney work totaling 115.60 hours. See id. The average partner/counsel rate was $568.75 per hour. Id. The average associate rate was $425 per hour. Id. The average non-attorney professional rate (for the work by the three paralegals, one support professional and one special assistant) was $243 per hour. Id. The law clerk rate was $395 per hour. Id. at 99. According to their biographies, the lead

attorneys on this matter, Keith M. Brandofino and David Mignardi, have experience handling foreclosure actions such as this one. See Brandifino Decl. Exs. B-D.

In light of counsel's experience and accounting for inflation, the hourly attorney rates are reasonable and within the range of rates approved by other courts in this District. See Wells Fargo Bank as Tr. for the Benefit of Holders of COMM 2015-LC19 Mortg. Tr. Comm. Mortg. Pass-Through Certificates v. 5615 Northern LLC et al., No. 20-CV-2048 (VSB) (KHP), 2023 WL 7394340, *8 (S.D.N.Y. May 4, 2023) (approving rates for Holland & Knight LLP with an average of $606.81 per hour for partners/senior counsel and $454.48 per hour for associates in a foreclosure case) report and recommendation adopted, No. 20-CV-2048 (VSB), 2023 WL 7384632 (S.D.N.Y. Nov. 8, 2023); HSBC Bank USA, N.A., 2021 WL 667661, at *7 (approving hourly rates of $571.50 and $423.00 in breach of contract case); Tabatznik v. Turner, No. 14-CV-8135 (JFK), 2016 WL 1267792, at *11-12 (S.D.N.Y. Mar. 30, 2016) (applying a per hour partner rate of $650 and associate rate of $425 in action to enforce a promissory note).

However, the rates sought by Plaintiff for the work performed by the law clerk and the non-attorney professionals is not reasonable. In this District, courts have found hourly rates for paralegals between $100 to $150 to be reasonable. Glob. Perez Garcia v. Hirakegoma Inc., No. 17-CV-7608 (SLC), 2020 WL 1130765, at *12 (S.D.N.Y. Mar. 9, 2020) (collecting cases); VFS Fin., Inc. v. Pioneer Aviation, LLC, No. 08-CV-7655 (GBD) (AJP), 2009 WL 2447751, at *4 (S.D.N.Y. Aug. 11, 2009) (finding an hourly rate of $125 reasonable for paralegals in an action for failure to pay on a promissory note). Plaintiff's requested average rate of $243 is unduly high. See Wells Fargo Bank, 2023 WL 7394340, at *8 (rejecting the requested paralegal rate of $250 and awarding a rate of $150). Additionally, Plaintiff requests an hourly rate of $395 for a law

15

clerk.[7] Brandofino Decl. Ex. A at 99. That rate, too, is unreasonable. See Wells Fargo Bank, 2023 WL 7394340, at *8 (rejecting a requested rate of $259 for a law clerk at Holland & Knight LLP and awarding a rate of $150). For all of these professionals, I recommend awarding an hourly rate of $150 per hour, which is consistent with the hourly rate typically found reasonable in this District for non-attorney professionals.

As to the number of hours expended, a review of the records demonstrates that the time spent on this matter was reasonable. The time entries are clear and substantive, and they show that Plaintiff's counsel spent an appropriate amount of time litigating this action, including notifying the Borrower and Guarantors of the events of default and demanding a cure of those defaults; drafting pleadings in this action, including a motion for the appointment of a receiver and responding to Defendants' opposition to that motion; requesting the entry of default against defendant NYC Environmental Control Board; drafting the motion for summary judgment and responding to Defendants' opposition to that motion; and drafting the documents submitted in support of Plaintiff's computation of damages. See Brandofino Decl. ¶ 11, Ex. A.

Plaintiff also requests $14,787.50 in costs. See Brandofino Decl. Ex. A. This is comprised of filing fees, postage, Westlaw research, and billable work to vendors, like process servers, title searches, and limited transportation. Id. Plaintiff's counsel documented its accrued costs in contemporaneously maintained billing records and submitted a sworn attorney declaration attesting to these costs. This record is sufficient to support the request for reimbursement of costs. See Wells Fargo Bank, 2023 WL 7394340, at *9 (awarding these

---

[7] Brandofino's Declaration does not provide any biographical details for the law clerk who billed on this matter, D'Andre Chapman. However, a review of the firm's website indicates that Chapman is now an associate at the firm. Chapman was thus a law school graduate, not yet admitted to the bar, when he performed work on this matter.

16

categories of costs and fees based on a similar showing). Accordingly, I recommend an award of property protective advances in the amount of $228,819 for attorneys' fees, as reflected in the table below, and $14,787.50 in costs, for a total amount of $241,402.92. See id.

| Timekeeper | Position | Requested Rate ($) | Awarded Rate ($) | Hours Billed | Award Amount ($) |
|---|---|---|---|---|---|
| Keith Brandofino | Partner | 685 | 685 | 69 | 47,265 |
| Maximiliano Rinaldi | Senior Counsel | 540 | 540 | 0.9 | 486 |
| David Mignardi | Senior Counsel | 525 | 525 | 199 | 104,363[8] |
| Benjamin Herd | Partner | 525 | 525 | 1.5 | 787.5 |
| Jasmine Chean | Associate | 485 | 485 | 97.1 | 47,093.50 |
| Jack Doherty | Associate | 425 | 425 | 1.3 | 552.5 |
| Adeyemi Adewuyi | Associate | 395 | 395 | 3.2 | 1,264 |
| Raina Duggirala | Associate | 395 | 395 | 24.5 | 9,677.50 |
| Brunie Colon | Paralegal | 325 | 150 | 4 | 600 |
| Patti Green | Paralegal | 225 | 150 | 27.7 | 4,155 |
| Kathy Ovalle | Paralegal | 225 | 150 | 71.1 | 10,655 |
| William Stafford | Administrative Support | 240 | 150 | 2 | 300 |
| D'Andre Chapman | Law Clerk | 395 | 150 | 9.6 | 1,440 |
| Glenn M. Huzinec | Special Assistant | 200 | 150 | 1.2 | 180 |
| **Totals** | | | | **512.1** | **$228,819** |

---

[8] David Mignardi billed 2.8 hours at a lower rate of $485 when he was counsel, but the majority of his work on this matter was as a senior counsel at a rate of $525. See Brandofino Decl. Ex. 1 at 3, 16. His total recommended award amount includes the hours billed at the lower rate: (485 x 2.8) + (525 x 196.2) = $104,363.

17

3. *Other fees*

Additionally, Plaintiff seeks $400.00 in connection with generating payoff statements, $81.52 incurred for filing a Uniform Commercial Code Financing Statement, and $75.00 for an NSF check fee. Gauer Decl. ¶ 24. Pursuant to the Mortgage and Loan Agreement, Plaintiff also seeks $166,895.27 for accrued interest incurred for the above-mentioned protective advances. Id. ¶¶ 21-25, Ex. 2 §§ 11.13, 11.24, Ex. 4 § 7.3. Plaintiff documented its accrued costs and submitted documentation substantiating these costs. See Gauer Suppl. Decl. Ex. 1.

Defendants do not contest the amount of these payments. And courts in this Circuit allow plaintiffs in foreclosure actions to recover such protective advances where the plaintiff has submitted sufficient documentation to prove the accuracy of its claims, as Plaintiff has done here. See E. Sav. Bank, FSB, 2022 WL 18858919, at *5 (awarding damages in a foreclosure action based on loan documents and payment records). I thus recommend that Plaintiff be awarded $617,883.66 for payment of insurance premiums and taxes. I also recommend that Plaintiff be awarded $241,402.92 in property protective advances, $400.00 in fees for payoff statements, $81.52 in UCC filing fees, $75.00 for the NSF Check Fee, and $166,895.27 for accrued interest on these payments.

**CONCLUSION**

For the reasons set forth above, I respectfully recommend that Plaintiff be awarded the following amounts: (1) unpaid principal on the loan of $11,600,000.00; (2) accumulated interest at the non-default rate of $1,950,784.89; (3) accumulated interest at the default rate of $1,996,801.68; (4) $19,132.48 in late fees; (5) $116,403.23 in special servicing fees; (6) $617,883.66 in taxes and insurance advances; (7) $241,402.92 in property protective advances; (8) $400.00 in payoff processing fees; (9) $81.52 in UCC filing fees; (10) $75.00 in NSF check fees; and (11) $166,895.27 in interest on advances.

**SO ORDERED.**

DATED:   New York, New York
         August 19, 2024

_____
VALERIE FIGUEREDO
United States Magistrate Judge

**PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

**Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file any objections. See also Fed. R. Civ. P. 6(a), 6(b), 6(d). A party may respond to any objections within 14 days after being served. Any objections and responses shall be filed with the Clerk of the Court. Any request for an extension of time to file objections or responses must be directed to the Honorable Denise L. Cote. If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; Fed. R. Civ. P. 6(a), 6(b), 6(d); Thomas v. Arn, 474 U.S. 140 (1985); Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010).**